# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**C.A. NO. 1:20-CV-10178-IT**

| | |
|---|---|
| SHARON RADFAR,<br>                    **Plaintiff,**<br><br>v.<br><br>CITY OF REVERE; BRIAN M. ARRIGO,<br>MAYOR; JAMES GUIDO, CHIEF OF<br>POLICE; SERGEANT JOSEPH I. COVINO;<br>and OTHER YET UNNAMED OFFICERS<br>OF THE REVERE POLICE DEPARTMENT,<br>individually and in their capacities as Mayor,<br>Chief of Police, Police Sergeant, and Officers<br>of the City of Revere,<br>                    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS, CITY OF REVERE, BRIAN M. ARRIGO, AND JAMES GUIDO'S, MOTION TO DISMISS

The Defendants, City of Revere ("City"), Mayor Brian M. Arrigo ("Arrigo"), and former Chief of Police James Guido ("Guido") (collectively "Municipal Defendants"), respectfully request, pursuant to Fed. R. Civ. P. 12(b)(6), that the Court dismiss so much of Plaintiff's Complaint as is directed to them, including the claims against Arrigo and Guido in their individual capacities, for the reasons set forth below.

## I. OVERVIEW OF THE COMPLAINT

In her Complaint, filed on January 29, 2020, Plaintiff alleges the following: On January 31, 2017, Plaintiff was served with an Abuse Prevention Order obtained *ex parte* by Covino in the Lynn District Court, and was also given a letter from her employer suspending her pending an investigation of criminal charges alleged against her by Covino. Her service weapons were

also seized.[1] (Complaint, ¶ 6). In obtaining the order Covino misrepresented calls and messages he and Plaintiff had exchanged, failed to disclose pertinent information, and made false and misleading claims that Plaintiff had threatened him and placed him in imminent fear of physical harm when in fact she had done nothing of the kind. (*Id.* ¶ 7). In filing the Complaint for Protection from Abuse and supporting affidavit, both of which contained false and misleading claims about Plaintiff, Covino acted in concert and with the advice of unnamed Revere Police officers. (*Id.* ¶ 8). Covino called Plaintiff's employer, making the same false and misleading claims, causing Plaintiff's employer to suspend her, open an investigation, and seek criminal charges against her. (*Id.* ¶ 9). Covino relentlessly pursued criminal charges against Plaintiff though he knew she had committed no crime and that the charges and claims were false, and continued those efforts for months after the Lynn District Court vacated the Abuse Prevention Order and ordered the return of Plaintiff's service weapons two weeks after the Order was issued. (*Id.* ¶¶ 10-11). Covino falsely and maliciously accused Plaintiff of a crime he knew she did not commit and, acting under color of law, drafted a Revere Police Department incident report making his false claims, listing himself as victim, reporting officer, and supervisor approving the report. (*Id.* ¶ 12). His efforts to have Plaintiff charged criminally included making false statements to Virginia investigators and failing to inform them that the restraining order had been vacated. (*Id.* ¶ 17). Despite these efforts, Plaintiff was not charged with any crime in Virginia or Massachusetts. (*Id.* ¶ 16).[2]

---

[1] It is undisputed that at the time Covino sought the Abuse Prevention Order against her Plaintiff was employed as a police officer with the George Mason University Police Department in which capacity she was issued and possessed at least one firearm.

[2] Plaintiff does not allege that Covino committed any domestic abuse against her, but only that Covino falsely accused her of abusing him.

Broadening her allegations to include the City, Arrigo, and Guido, Plaintiff claims that those parties knew that Plaintiff was not the perpetrator of domestic abuse against Covino and that he was thus wrongfully trying to have Plaintiff criminally charged and cause the loss of her career and destroy her life. (*Id.* ¶ 13). They also knew of Covino's lengthy history of misconduct and failed to train, discipline, or properly supervise him. (*Id.*). Plaintiff alleges that the Defendants' misconduct caused Plaintiff the loss of her job and her private telephone records to be the subject of a search warrant in which a court in the jurisdiction where she worked as a police officer received the "smears" that had been leveled against her. (*Id.* ¶¶ 14-15). Plaintiff claims that all of the Defendants treated her differently from others similarly situated due to her gender and national origin. (*Id.* ¶ 18). Finally, Plaintiff alleges that the City, Arrigo, Guido, and unnamed officers all engaged in a custom and policy of failing to train and discipline officers in providing proper responses to domestic abuse and protection of constitutional rights, and of protecting men who are members of the law enforcement fraternity from the consequences of violating the law, and showed deliberate indifference to the need for training, supervision, or discipline of Covino and other unnamed officers. (*Id.* ¶¶ 21-23).

On the basis of these allegations, Plaintiff asserts ten counts in her Complaint: (1) violation of her rights to equal protection under the Fifth and Fourteenth Amendments of the United States Constitution; (2) selective prosecution and enforcement of the law due to gender and national origin bias; (3) defamation; (4) deprivation of her rights under the Massachusetts Civil Rights Act; (5) intentional infliction of emotional distress; (6) "deliberate indifference to the need for training;" (7) conspiracy to violate her civil rights under 42 U.S.C. § 1985(2)&(3); (8) "refusal to prevent wrongs committed against Plaintiff" under 42 U.S.C. § 1986; (9) abuse of process; and (10) malicious prosecution. Though it is unclear, the Municipal Defendants treat all

but the last two counts (abuse of process and malicious prosecution) as being directed against them.[3]

The Defendants Arrigo and Guido are sued both individually and in their official capacities. (Complaint at ¶ 1 - Caption). To the extent they are sued in their official capacities, Plaintiff's claims against them are tantamount to claims against the City itself. *Brandon v. Holt*, 469 U.S. 464, 472 (1985); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Saldivar v. Pridgen*, 91 F. Supp. 3d 134, 137 (D. Mass. 2015) ("Under both Massachusetts and federal law, a claim against a chief of a municipal police department in his official capacity is a claim against the municipality itself."). Thus, the arguments set forth below on behalf of the City apply equally to Arrigo and Guido in their official capacities.

## II. ARGUMENT

Plaintiff's Complaint fails to state claims upon which relief can be granted against the City of Revere and Arrigo and Guido, both in their official and individual capacities, for multiple reasons as discussed below.

**A.  Plaintiff Fails to State Claims Under 42 U.S.C. § 1983**

Plaintiff asserts three federal civil rights claims against the Municipal Defendants: (1) violation of her rights to equal protection (Count I); (2) selective prosecution and enforcement due to gender and national origin bias (Count II); and (3) deliberate indifference to the need for

---

[3] This is one of two known cases in which a male police officer who had been involved in a personal relationship with Plaintiff sought an abuse prevention order against her for protection from her alleged stalking and harassing behavior, as a result of which Plaintiff sued him and his employer for violation of her civil rights. In the other case, *Radfar v. Crowley et al.* (D. Mass. No. 1:20-cv-12151-RWZ), filed on December 2, 2020, and in which Plaintiff is represented by the same attorney as in the instant case, Plaintiff makes similar allegations and largely identical claims against Brockton police officers, the Brockton Chief of Police, and the City of Brockton.

training, supervision, and discipline (Count VI).   All three claims rest on nothing more than conclusory statements adorned with constitutional labels, which are not entitled to be accepted as true when evaluating the sufficiency of the allegations on a motion to dismiss for failure to state a claim.

### 1.      *Standard for Reviewing Adequacy of Complaint on a Rule 12(b)(6) Motion*

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court revisited the requirement of Fed. R. Civ. P. 8(a)(2) that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   Reiterating what it had recently stated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court explained that while the pleading standard of Rule 8 does not require detailed factual allegations, it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation[,] [and a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678 (internal citations and quotation marks omitted).   In other words, the factual allegations of the complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Gagliardi v. Sullivan*, 513 F. 3d 301, 305 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).   The Court explained that two "working principles" underlied its decision in *Twombly*.   The first was that the tenet that a court must accept as true all of the allegations in a complaint does not extend to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. The second was that, in evaluating whether a complaint states a plausible claim for relief, a reviewing court must undertake a "context-specific" task, drawing on its judicial experience and common sense.   Where the well-pleaded facts permit the court to infer no more than the mere

possibility of misconduct, the complaint has failed to show that "the pleader is entitled to relief," and the complaint is subject to dismissal. *Id.* at 679; *Saldivar v. Pridgen*, 91 F. Supp. 3d at 137.

The Court then invited courts considering a motion to dismiss to implement the "two-pronged approach" illustrated in *Twombly* by first identifying the allegations in the complaint that are no more than conclusions, and thus not entitled to be accepted as true, and then determining whether, assuming the truth of any remaining well-pleaded factual allegations, they give rise to a plausible claim for relief. *Ashcroft*, 556 U.S. at 679; *Richmond v. Peraino*, 128 F. Supp. 3d 415, 417 (D. Mass. 2015) (To survive a motion to dismiss under Rule 12(b)(6) . . . "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Moreover, *each* defendant's role [in the alleged constitutional violation] must be sufficiently alleged to make him or her a plausible defendant. After all, 'we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F. 3d 1, 16 (1st Cir. 2011) (emphasis in original) (quoting *Sanchez v. Pereira-Castillo*, 590 F. 3d 31, 48 (2009) (emphasis in original)). Also, "§ 1983 liability cannot rest solely on a defendant's position of authority." *Ocasio-Hernandez*, 640 F. 3d at 16.

Applying these principles to the instant case, it is obvious that the Complaint fails to state viable claims against the Municipal Defendants for violation of rights under 42 U.S.C. § 1983.

### 2.   *Equal Protection (Counts I & II)*

Plaintiff alleges in Counts I and II of her Complaint, respectively, that the Defendants (1) violated her right to the equal protection of the laws by "endeavor[ing] to assist Covino in obtaining an advantage over her in his civil proceedings initiated maliciously and as an abuse of

process" (Complaint, ¶ 27) and (2) "repeated selective enforcement of the law for the benefit of Covino and as his agents violated Plaintiff's rights to equal protection of the laws."

To establish an equal protection claim, a plaintiff must adduce sufficient evidence from which a rational jury reasonably could conclude that, "compared to others similarly situated, [he] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Tapalian v. Tuniso*, 377 F. 3d 1, 5 (1st Cir. 2004) (quoting *Barrington Cove Ltd. P'ship v. R.I. Hous. and Mortgage Fin. Corp*, 246 F. 3d 1, 7 (1st Cir. 2001)).  To the extent Plaintiff's claim rests on the malicious or bad faith prong, she "must establish more than that the government official's actions were arbitrary or erroneous; instead, the plaintiff must establish that the defendant's actions constituted a 'gross abuse of power.'" *Tapalian*, 377 F. 3d at 5-6 (quoting *Baker v. Coxe*, 230 F. 3d 470, 474 (1st Cir. 2000)).  A selective prosecution claim under § 1983 is a species of equal protection violation, *Wentworth Precious Metals, LLC v. City of Everett*, No. 11-10909-DPW, 2013 WL 441094, at *8 (D. Mass. Feb. 4, 2013).  To establish the selective treatment, a plaintiff "must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, [and] which have the capacity to demonstrate that [plaintiffs] were singled . . . for unlawful oppression." *Id.* (quoting *Rubinovitz v. Rogato*, 60 F. 3d 906, 909-10 (1st Cir. 1995)).

It is well settled that a municipality cannot be held liable under § 1983 based solely on a respondeat superior theory. *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691 (1978).  In announcing that a local government cannot be sued under § 1983 for alleged wrongdoing inflicted solely by employees or agents, the Supreme Court in *Monell* concluded that a municipality can be liable under § 1983 only where the plaintiff proves that an official

government policy or custom directly caused the alleged constitutional violation. *Id.* at 694. A plaintiff who brings a § 1983 action against a municipality bears the burden of showing that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Haley v. City of Boston*, 657 F. 3d 39, 51 (1st Cir. 2011) (quoting *Board of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original)). A § 1983 claim against a municipality based on a theory of municipal policy is viable only where the alleged unconstitutional action "implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Chapman v. Finnegan*, 950 F. Supp. 2d 285, 293 (D. Mass. 2013) (quoting *Monell*, 436 U.S. at 690). Similarly, to establish a § 1983 claim against a municipality on a theory of municipal custom, a plaintiff must demonstrate a practice by city officials that is so "well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. *Id.* (citing *Bordanaro v. McLeod*, 871 F. 2d 1151, 1156 (1st Cir. 1989)).

Here, Plaintiff's Complaint is devoid of any facts supporting the assertion that any municipal policy or custom caused her to be treated differently from other similarly situated persons in connection with the abuse prevention proceedings initiated against her by Covino or his other alleged misconduct, or that by its deliberate conduct the City was in any way the moving force behind any such constitutional violations. Likewise, the Complaint fails to identify specific instances where persons similarly situated to Plaintiff were treated differently, thus demonstrating that Plaintiff was singled out. Also absent are any facts explaining Arrigo or Guido's role in the alleged constitutional violation sufficient to make them plausible defendants. Plaintiff's allegations that "Defendants treated Plaintiff differently from others similarly situated

for impermissible reasons" (Complaint, ¶ 18), and that the City, Arrigo, Guido, and unnamed officers "engaged in a custom and policy of failing to train and discipline officers in providing proper responses to domestic abuse and protection of constitutional rights . . . and of protecting men who are members of the law enforcement fraternity from the consequences of violating the law . . . and showed a deliberate indifference to the need for training, supervision, or discipline of Defendant Covino and Other Unnamed Officers" (Complaint ¶¶ 21-23) are merely formulaic recitations of the elements of a cause of action that are not entitled to be accepted as true in evaluating the sufficiency of this claim on a Rule 12(b)(6) motion. Implementing the "two-pronged" approach set out in *Twombly* and disregarding these conclusory assertions, the remaining allegations of the Complaint fail to give rise to a plausible claim for relief against the City of Revere or Arrigo and Guido in their individual capacities for violation of Plaintiff's right to equal protection.

### 3. Deliberate Indifference to Need for Training (Count VI)

#### a. *Against the City*

In Count VI of her Complaint, Plaintiff alleges that the injuries she suffered as a result of Covino and Other Unnamed Officers' misconduct was caused by the Municipal Defendants' "deliberate indifference to the need for training, supervision and discipline of Defendants Covino and Other Unnamed Officers." (Complaint, ¶ 43).

"The liability criteria for 'failure to train' claims are exceptionally stringent." *Hayden v. Grayson*, 134 F. 3d 449, 456 (1st Cir. 1998). Municipal liability on a claim of failure to train requires a showing that the municipal decisionmakers "knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies." *Aldrich v. Town of Milton*, 881 F. Supp. 2d 158, 171 (D. Mass. 2012). A

municipality can be held liable for a failure to train police officers only when the failure amounts

to deliberate indifference to the rights of persons with whom the police come into contact, and is

closely related to, i.e., the moving force behind, the constitutional injury. *City of Canton v.*

*Harris*, 489 U.S. 378, 388 (1989). Thus, a plaintiff asserting a claim of failure to train must

prove both (1) that the municipality was deliberately indifferent to the need to train and (2) that

the lack of training actually caused the constitutional violation in question. *Connick v.*

*Thompson*, 563 U.S. 51, 61-62 (2011). Addressing the parameters of a failure to train claim in

*Connick*, the Supreme Court explained:

> In limited circumstances, a local government's decision not to train
> certain employees about their legal duty to avoid violating citizens'
> rights may rise to the level of an official government policy for
> purposes of § 1983. A municipality's culpability for a deprivation
> of rights is at its most tenuous where a claim turns on a failure to
> train. To satisfy the statute, a municipality's failure to train its
> employees in a relevant respect must amount to deliberate
> indifference to the rights of persons with whom the [untrained
> employees] come into contact. Only then can such a shortcoming
> be properly thought of as a city policy or custom that is actionable
> under § 1983.
>
> Deliberate indifference is a stringent standard of fault, requiring
> proof that a municipal actor disregarded a known or obvious
> consequence of his action. Thus, when city policymakers are on
> actual or constructive notice that a particular omission in their
> training program causes city employees to violate citizens'
> constitutional rights, the city may be deemed deliberately
> indifferent if the policymakers choose to retain that program. The
> city's policy of inaction in light of notice that its program will
> cause constitutional violations is the functional equivalent of a
> decision by the city itself to violate the Constitution. A less
> stringent standard of fault for a failure-to-train claim would result
> in de facto respondeat superior liability on municipalities.
>
> A pattern of similar constitutional violations by untrained
> employees is ordinarily necessary to demonstrate deliberate
> indifference for purposes of failure to train.

*Connick*, 563 U.S. at 61-62 (2011) (internal citations and quotation marks omitted); *Aldrich*, 881 F. Supp. 2d at 171.

Apart from a dearth of facts suggesting that the City knew or should have known that relevant training was inadequate, yet was deliberately indifferent to the consequences of those inadequacies, since Plaintiff alleges that Covino acted intentionally in falsely accusing her of abusing him in obtaining the Abuse Prevention Order against her, the City's failure to train Covino with respect to responding to domestic abuse cannot be considered the moving force behind the alleged violation of Plaintiff's rights. See *Connick*, 563 U.S. at 59 n.5 (questioning whether causation could be proved where the misconduct that was claimed could have been avoided by proper training was done intentionally); *Hayden v. Grayson*, 134 F. 3d at 457 n.14 (1st Cir. 1998) (no showing that whatever training was not provided to Grayson could have thwarted purposeful discrimination). Moreover, Plaintiff fails to allege the requisite pattern of constitutional violations. *Swain v. Spinney*, 117 F. 3d 1, 11 (1st Cir. 1997) (lack of notice of prior constitutional violations defeats failure-to-train claim).

### b.   *Against Arrigo and Guido*

Absent participation in the alleged conduct, a supervisor may be held liable for constitutional violations only when "(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was affirmative[ly] link[ed] to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence [of the supervisor] amounting to deliberate indifference." *Chapman v. Finnegan*, 950 F. Supp. 2d 285, 294 (D. Mass. 2013) (quoting *Pineda v. Toomey*, 533 F. 3d 50, 54 (1st Cir. 2008)). A plaintiff must show a causal link between the supervisor's conduct and the subordinate's violative act or omission. *Chapman*, 950

F. Supp. 2d at 294.  Causation may be satisfied if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct, and may also be satisfied by a showing of a long history of widespread abuse sufficient to alert a supervisor to ongoing problems, and the supervisor fails to take corrective action.  *Id.*

Here, Plaintiff points to no facts linking Arrigo or Guido to Covino's alleged misconduct towards Plaintiff in any way, shape, or form.  No facts are alleged suggesting that either Arrigo or Guido knew anything about Plaintiff or Covino's relationship with her, let alone any action or inaction on their parts affirmatively linking them to Covino's behavior in the sense of encouragement, condonation, acquiescence, or gross negligence.

**B.      Plaintiff Fails to State Claims under the Massachusetts Tort Claims Act, G.L. c. 258**

    *1.      Against the City*

Plaintiff's claims for defamation and intentional infliction of emotional distress (Counts III and V, respectively) constitute claims for damages under the Massachusetts Tort Claims Act, G.L. c. 258,[4] and are thus subject to the provisions of the Act, including the presentment requirements of § 4 and the specific exemptions enumerated in § 10.  These claims fail to state claims against the City of Revere due to lack of presentment as well as the City's immunity from liability for intentional torts under G.L. c. 258, § 10(c).

    *a.      Failure of Presentment*

G.L. c. 258, § 4 requires that a "civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."  *Harrington v. City of Attleboro*, 172 F. Supp. 3d

---

[4] The Massachusetts Tort Claims Act provides "a comprehensive statutory scheme . . . govern[ing] the liability of public employers in tort actions."  *Morrissey v. New England Deaconess Ass'n – Abundant Life Communities, Inc.*, 458 Mass. 580, 590 (2010).

337, 347 (D. Mass. 2016) ("All MTCA actions are subject to the presentment requirement unless specifically exempted by statute.").

> Presentment is . . . a statutory condition precedent to recovery under G. L. c. 258[,] [and] [i]n cases in which the issue is not raised until the time has elapsed during which presentment properly could have been made, the plaintiff's complaint is subject to dismissal on a motion made under Mass. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

*Vasys v. Metropolitan Dist. Com.*, 387 Mass. 51, 55-56 (1982). "If proper presentment is not made within the time allotted, the plaintiff's complaint is subject to dismissal[,] [and] [t]he public employer need not show prejudice to rely upon the plaintiff's failure of presentment." *Spring v. Geriatric Auth. of Holyoke*, 394 Mass. 274, 283 (1985) (citation omitted).

Here, Plaintiff failed to make presentment of her c. 258 claims within two years of the date upon which the alleged causes of action arose, or at any time, and thus these claims must be dismissed for this reason alone.

### b.    Immunity Under G.L. c. 258, § 10(c)

Under the Massachusetts Tort Claims Act, G.L. c. 258, the City of Revere is immune from suit for any claim arising out of an intentional tort.  Under § 10 of the Act,

> [t]he provisions of sections one to eight, inclusive, shall not apply to: . . . (c) any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations[.]

G.L. c. 258, § 10(c). *Consolo v. George*, 835 F. Supp. 49, 52 (D. Mass. 1993) ("It is well settled law that pursuant to the Massachusetts Tort Claims Act, a public employer is immune from liability for the intentional torts of its public employees."). *See Nelson v. Salem State College*, 446 Mass. 525, 537 (2006) ("Intentional torts are expressly exempted from the [Massachusetts

Tort Claims] Act, and therefore a public employer cannot be sued for its employee's intentionally tortious conduct."). Also, the use of the word "including" immediately preceding the listing of intentional torts in § 10(c) indicates that the "list is representative, not all-inclusive, and that any intentional tort is covered by § 10(c)." *Barrows v. Wareham Fire Dist.*, 82 Mass. App. Ct. 623, 626 (2012).

Here, Plaintiff's claims for defamation[5] and intentional infliction of emotional distress are explicitly identified in § 10(c) as intentional torts for which the City of Revere is exempt from liability, and therefore fail to state claims against the City and must be dismissed.

### 2.   *Against Arrigo and Guido*

### a.   *Defamation*

Plaintiff asserts a claim for defamation in Count III, alleging that while "Defendants knew Plaintiff had not violated any laws nor committed any crime" they "indicated to Plaintiff's employer and others that she had committed criminal acts."

Here, Plaintiff relies on imagined facts, wildly claiming without any factual support whatsoever that the "Defendants knew well that Covino was wrongly engaged in efforts to have Plaintiff criminally charged, to cause the loss of her career and to destroy her life, and all knew Plaintiff was not the perpetrator of domestic violence or abuse of Covino."[6] (Complaint, ¶13). No facts are alleged as to how or why Mayor Arrigo or former Chief of Police Guido could

---

[5] Defamation encompasses the torts of libel and slander. *Boyle v. Barnstable Police Dep't*, 818 F. Supp. 2d 284, 307 (D. Mass. 2011) (quoting *Draghetti v. Chmielewski*, 416 Mass. 808, 812 n.4 (1994)).

[6] It is difficult to square these unsubstantiated accusations with Rule 11's admonition that by submitting a pleading counsel certifies that to the best of his or her knowledge, information, and belief the factual contentions contained therein have, or will likely have, evidentiary support. Plaintiff's counsel was cautioned about her unsubstantiated rhetoric by Judge Stearns in his Memorandum and Order in *Beasley v. Lowe's Home Centers, Inc.*, No. 15-12665-RGS, 2017 WL 1739172, at *6 (D. Mass. May 3, 2017) ("Plaintiff's counsel, however, should take mind of her duty under Rule 11 to support her rhetoric and allegations with competent evidence or actionable wrongdoing.").

possibly have had any knowledge of Covino's personal relationship with Plaintiff or his alleged misconduct towards her, or how they could know whether Plaintiff or Covino, if either of them, was abusive towards the other.  The allegation that Covino drafted a Revere Police Department incident report in which he allegedly made false claims against Plaintiff is far from sufficient, standing alone, to impute such knowledge to Arrigo or Guido.[7]  Apart from these conclusory assertions, the Complaint lacks any facts that City of Revere officials had any knowledge of or conspired or were complicit in any of Covino's alleged misconduct towards Plaintiff, and thus fails to give rise to plausible claims against these parties for defamation.

### b.    *Intentional Infliction of Emotional Distress*

Plaintiff alleges in Count V that the "Defendants' acts and omissions constituted outrageous conduct and intentionally inflicted emotional distress upon Plaintiff."  To set forth a sufficient claim for intentional infliction of emotional distress, a plaintiff must allege that (1) the defendants intended to inflict emotional distress or should have know that emotional distress was the probable effect of their conduct, (2) the defendants' conduct was extreme and outrageous, (3) the defendants' actions caused the plaintiff's distress, and (4) the plaintiff's distress was so severe "that no reasonable person could be expected to endure it."  *Baxter v. Conte*, 190 F. Supp. 2d 123, 130 (D. Mass. 2001) (quoting T*etrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997).  "Extreme and outrageous" conduct is conduct that goes "beyond all possible bounds of decency" and "utterly intolerable in a civilized community."  *Therrien v. Hamilton*, 849 F. Supp. 110, 116 (D. Mass. 1994) (quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976).

---

[7] That the report was authored by Covino naming himself as victim, reporting officer, and supervisor approving the report (Complaint, ¶ 12) strongly suggests that the report was created for his own personal reasons – more akin to a "memo to file" than an official police report - and was not intended to be available to other police personnel or city officials.

Plaintiff's vague assertions of misconduct and unspecified acts and omissions on the part of the municipal officials obviously fall well short of this high standard and fail to state claims against Arrigo or Guido as a matter of law.

**C.      Plaintiff Fails to State Claims Under G.L. c. 12, §§ 11H & 11I**

### 1.      *Against the City*

Plaintiff fails to state a claim against the City of Revere for violation of her rights under the Massachusetts Civil Rights Act (MCRA), G.L. c. 12, §§ 11H & 11I, because a municipality is not considered a person under the Act. *Saldivar v. Pridgen,* 91 F. Supp. 3d 134, 139 (D. Mass. 2015); *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 591-592 (2001) ("[A] municipality is not a 'person' covered by the Massachusetts Civil Rights Act (MCRA), G.L. c. 12, §§ 11H, 11I.").

### 2.      *Against Arrigo and Guido*

To state a claim under the MCRA against the municipal officials, Plaintiff must show that (1) her exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth (2) were interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation, or coercion. *Farrah ex rel. Estate of Santana v. Gondella*, 725 F. Supp. 2d 238, 247 (D. Mass. 2010). "In deference to a legislative concern that the MCRA not be interpreted to create 'a vast constitutional tort,' the Act is 'explicitly limited' to situations 'where the derogation of secured rights occurs by threats, intimidation or coercion' involving a specific threat of harm 'directed toward a particular individual or class of persons.'" *Id.* (quoting *Bally v. Northeastern Univ.* 403 Mass. 713, 718-719 (1989)). In this context, "[a] '[t]hreat' . . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. 'Intimidation' involves putting in fear

for the purpose of compelling or deterring conduct. . . . ['Coercion' involves] the application to another of such force, either physical or moral, as to constrain [a person] to do against his will something he would not otherwise have done." *Farrah ex rel. Estate of Santana v. Gondella*, 725 F. Supp. 2d at 247 (quoting *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994)).

Here again, apart from conclusory assertions and the reference to the "threats," "intimidation," and "coercion" buzzwords amidst her various claims, the Complaint provides no factual support that Mayor Arrigo or former Chief of Police Guido had any knowledge whatsoever of Covino's relationship with Plaintiff or his alleged wrongful conduct towards her, let alone threatened, coerced, or intimidated her in any way.

**D.     Conspiracy Under 42 U.S.C. § 1985**

In Count VII of her Complaint, Plaintiff claims that she was the victim of a conspiracy to deprive her of her constitutional rights under 42 U.S.C. § 1985(2)&(3).  Plaintiff alleges that (1) she was "intimidated, threatened, and coerced not to offer testimony or assert her position in a case in which she was a witness and a party by the misconduct of two or more of the Defendants," and (2) that "two or more of the Defendants conspired for the purpose of impeding, hindering, obstructing, or defeating, the due course of justice in the Commonwealth of Massachusetts, with intent to deny to Plaintiff the equal protection of the laws."  (Complaint, ¶ 45).

The first part of Plaintiff's allegation falls under the first clause of § 1985(2) which "imposes liability on persons who conspire to deter, intimidate, or otherwise interfere with parties, witnesses, and jurors in any 'court *of the United States*.'" *Unitt v. Helsel*, No. 13-11926-JLT, 2013 WL 5437338, at *3 (D. Mass. Sept. 24, 2013) (emphasis in original); *Knowlton v.*

*Shaw*, 704 F. 3d 1, 11 n.15 (1st Cir. 2013) ("The first clause of 1985(2) covers conspiracies to interfere with justice in the federal courts."). Since Plaintiff's alleged conspiratorial interference has to do with proceedings in a Massachusetts state court, she fails to state a claim under the first clause of § 1985(2). In any event, the Complaint fails to allege how she or any witness was interfered with or how the alleged conspirators accomplished such interference.

The second clause of § 1985(2), as well as § 1985(3), covers conspiracies to interfere with justice in the state courts "with intent to deny any citizen the equal protection of the laws."

> To state a claim under §1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.

*Aulson v. Blanchard*, 83 F. 3d 1, 3 (1st Cir. 1996) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 103 (1971)). A plaintiff may recover under this section "only when the conspiratorial conduct of which he complains is propelled by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Id.* (quoting *Griffin*, 403 U.S. at 102). Regarding this last requirement, the plaintiff "must allege facts showing that (1) the defendants conspired against [him] because of [his] membership in a class, and (2) the criteria defining the class are invidious." *Id.* at 4. Because the language of this part of the statute is directed toward the equal protection of the laws, a plaintiff must allege a "class-based, invidiously discriminatory animus" to state a plausible § 1985(2) claim. *Knowlton v. Shaw*, 704 F. 3d at 11-12 (quoting *Griffin*, 403 U.S. at 102). Stating a claim under § 1985 requires "plausible allegations of an agreement among the conspirators to violate a plaintiff's rights (or factual allegations that allow the reasonable inference of such an agreement)." *Hudson v. MacEachern*, 94 F. Supp. 3d 59, 70 (D. Mass. 2015). Further, "allegations of conspiracy must . . . be supported by material facts, not merely

18

conclusory statements" and such claims of conspiracy are subject to dismissal where the allegations "neither elaborate [ ] nor substantiate[ ][the] bald claims that certain defendants 'conspired' with one another." *Id.* (quoting *Slotnick v. Garfinkle*, 632 F.2d 163, 165-66 (1st Cir. 1980)).

Here, Plaintiff fails to allege any racial or otherwise class-based invidiously discriminatory animus underlying the alleged conspiratorial conduct of City officials, the only reference to her gender or ethnicity being in the context of her equal protection claim (Complaint, ¶¶ 18, 29). Moreover, other than simply reciting that she was conspired against, the Complaint is devoid of any facts tending to show the existence of a conspiracy among Covino, Arrigo, and Guido.

Accordingly, Plaintiff's 42 U.S.C. §1985 conspiracy claims against the Municipal Defendants fail to state a claim as a matter of law and must be dismissed.

## E.     Refusal to Prevent Wrongs Under 42 U.S.C. § 1986

Plaintiff asserts in Count VIII a claim under 42 U.S.C. § 1986, which creates a right of action against a party who, "having knowledge that any of the wrongs" in furtherance of a conspiracy prohibited by § 1985 "are about to be committed," and "having the power to prevent or aid in preventing the commission of the same, neglects or refuses to do so." This claim was dead on arrival, as the statute provides for a one-year limitations period, stating that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." Since the Complaint in this action was filed on January 29, 2020, any claim under § 1986 must have accrued at some point on or after January 29, 2019, to be timely. *See Salcedo v. Town of Dudley*, 629 F. Supp. 2d 86, 97, 99 (D. Mass. 2009). According to the allegations in the Complaint, Covino's conduct in obtaining the Abuse

Prevention Order against Plaintiff and making false and misleading claims about her to her employer and Virginia investigators causing her to lose her job, and necessarily any alleged conduct on the part of the other Defendants in assisting or conspiring with Covino, all occurred well before January 29, 2019. Thus, any claim against the Defendants under § 1986 is time-barred.[8]

III.   CONCLUSION

WHEREFORE, for the reasons set forth above, the Municipal Defendants respectfully request that the Court enter an order dismissing all of the claims against them on the grounds that they fail to state claims upon which relief can be granted.

CITY OF REVERE, BRIAN M. ARRIGO, and
JAMES GUIDO,
By their attorneys,


 /s/  Daniel E. Doherty
Paul Capizzi, City Solicitor
BBO# 646296
pcapizzi@revere.org
Daniel E. Doherty, Assistant City Solicitor
BBO# 127010
ddoherty@revere.org
City Hall, 281 Broadway
Revere, MA 02151
(781) 286-8166

---

[8] Plaintiff's counsel saw her § 1986 dismissed due to the one-year limitation period in *Salcedo*.

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1

I, Daniel E. Doherty, Assistant City Solicitor and counsel of record for the Defendants, City of Revere, Brian M. Arrigo, and James Guido, hereby certify that, pursuant to L.R. 7.1(a)(2), I conferred with Plaintiff's counsel by telephone on Friday, March 12, 2012, and attempted in good faith to resolve or narrow the issues set forth in the accompanying motion.

  /s/  Daniel E. Doherty
Daniel E. Doherty

## CERTIFICATE OF SERVICE

I, Daniel E. Doherty, Assistant City Solicitor and counsel of record for the Defendants, City of Revere, Brian M. Arrigo, and James Guido, hereby certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and that copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

  /s/  Daniel E. Doherty
Daniel E. Doherty

Dated:  March 15, 2021