UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:20-cv-10178-IT

| | |
|---|---|
| SHARON RADFAR<br>    Plaintiff<br><br>v.<br><br>CITY OF REVERE, and<br>BRIAN M. ARRIGO, MAYOR; and<br>JAMES GUIDO, CHIEF OF POLICE; and<br>SERGEANT JOSEPH I. COVINO; and<br>OTHER AS YET UNNAMED OFFICERS<br>OF THE REVERE POLICE<br>DEPARTMENT; INDIVIDUALLY AND<br>IN THEIR OFFICIAL CAPACITIES AS<br>MAYOR, CHIEF OF POLICE AND<br>POLICE SERGEANT AND OFFICERS<br>OF THE CITY OF REVERE,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

TABLE OF CONTENTS RE: MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT,
JOSEPH I. COVINO'S, MOTION FOR SUMMARY JUDGMENT

TABLE OF AUTHORITIES ................................................................................ iii

BACKGROUND . ........................................................................................... 1

ALLEGATIONS IN THE PLAINTIFF'S COMPLAINT .................................................. 2

ARGUMENT ................................................................................................ 3

CIVIL RIGHTS CLAIM .................................................................................... 9

EQUAL PROTECTION .................................................................................... 13

DEFAMATION ............................................................................................. 14

MASSACHUSETTS CIVIL RIGHTS CLAIM ............................................................ 16

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS .......................................... 17

i

REFUSAL TO PREVENT WRONGS COMMITTED AGAINST PLAINTIFF, ABUSE OF

PROCESS AND MALICIOUS PROSECUTION ................................................................ 17

CONCLUSION ................................................................................................................... 18

TABLE OF AUTHORITIES

<u>Cases</u>

*Agis* v. *Howard Johnson Co.*

371 Mass. 140 (1976) ............................................................ 17

*Anderson v. Liberty Lobby, Inc.*

477 U.S. 242, (1986) ............................................................ 3

*Ayala-Sepulveda* v. *Municipality of San German*

671 F.3d 24 (1st Cir. 2012)..................................................... 14

*Baker v. St. Paul Travelers Ins. Co.*

670 F.3d 119 (1ˢᵗ Cir. 2012) ................................................. 3

*Bally* v. *Northeastern Univ.*

404 Mass. 713 (1989) ............................................................ 16

*Barreto–Rivera* v. *Medina-Vargas*

168 F.3d 42 (1st Cir. 1999) ................................................... 10

*Barrios–Velazquez* v. *Asociacion De Empleados Del Estado Libre Asociado*

84 F.3d 487 (1st Cir. 1996) .................................................... 10

*Beecy* v. *Pucciarelli*

387 Mass. 589 (1982) ........................................................ 17, 18

*Camilo–Robles* v. *Hoyos*

151 F.3d 1  (1st Cir. 1998) ..................................................... 10

*Clark* v. *Boscher*

514 F.3d 107 (1st Cir. 2008) .................................................. 13

*Cohlmia* v. *Ardent Health Services, LLC*

448 F.Supp.2d 1253 (N.D. Okla .2006) ................................... 15

*Collins* v. *Nuzzo*

      24 F.3d 246 (1st Cir.2001) ........................................................................ 9

*Creative Environments, Inc*. v. *Estabrook*

      680 F.2d 822 (1st Cir. 1982) ................................................................... 14

*Currier* v. *Nat'l Bd. of Med. Exam'rs*

      462 Mass. 1 (2012) ................................................................................. 16

*District of Columbia Ct. of Appeals* v. *Feldman*

      460 U.S. 462, 103 S.Ct. 1303 (1983) ...................................................... 11

*Glovsky* v. *Roche Bros. Supermarkets*

      469 Mass. 752 (2014) ............................................................................. 16

*Grella* v. *Salem Five Cent Savings Bank*

      42 F.3d 26 (1st Cir. 1994) ....................................................................... 13

*Haufler* v. *Zotos*

      466 Mass. 489 (2006) ............................................................................. 16

*Hill* v. *Conway*

      193 F.3d 33 (1st Cir. 1999) ..................................................................... 12

*Hustler Magaxzine, Inc.* v. *Falwell*

      485 U.S. 46, 108 S.Ct. 876 (1988) ......................................................... 17

*Kelly* v. *Schmidberger*

      806 F.2d 44 (2d Cir. 1986) ..................................................................... 15

*Kennedy* v. *Town of Billerica*

      617 F.3d 520 (1st Cir. 2010) ....................................................................17

*Keystone Shipping Co.* v. *New England Power Co.*

    109 F.3d 46 (1st Cir. 1997) ..................................................................... 12, 13

*King* v. *Globe Newspaper Co.*

    400 Mass. 705 (1987) ................................................................................. 15

*Kyricopolous* v. *Town of Orleans*

    967 F.2d 14 (1st Cir. 1992) ....................................................................... 12

*Liguori* v. *Alexander*

    495 F.Supp. 641 (S.D.N.Y. 1980) ............................................................ 15

*Linker* v. *Custom–Bilt Machinery, Inc.*

    594 F.Supp. 894 (E.D. Pa. 1984) ............................................................. 15

*Lu* v. *Smith*

    No. 15-cv-14081-DJC, 2016 WL 4595206, at *3 (D. Mass. Sept. 2, 2016) ............. 14

*Mangual* v. *City of Worcester*

    285 F.Supp. 3d 465 (D.Mass. 2018) ........................................................ 16

*Martinez* v. *Colon*

    54 F.3d 980 (1st Cir. 1995) ................................................................. 10, 11

*Mattoon v. City of Pittsfield*

    980 F.2d 1  (1st Cir. 1992 ......................................................................... 4

*McGeorge* v. *Continental Airlines, Inc.*

    871 F.2d 952 (10th Cir. 1989) ................................................................. 15

*Migra* v. *Warren City Sch. Dist. Bd. of Educ.*

    465 U.S. 75 104 S.Ct. 892 (1984) ............................................................ 12

*Nelson* v. *Miller*

    227 Kan. 271, 607 P.2d 438 (1980) ......................................................................... 18

*Parrilla–Burgos v. Hernandez-Rivera*

    108 F.3d 444 (1ˢᵗ Cir. 1997) ................................................................................... 11

*PHC Inc. Shareholder Litig.*

    762 F.3d 138 (1st Cir. 2014) .................................................................................... 4

*Pineiro* v. *Gemme*

    937 F. Supp. 2d 161 (D. Mass. 2013) ...................................................................... 14

*Reid v. New Hampshire*

    56 F.3d 332 (1st Cir. 1995) ...................................................................................... 4

*Resolution Trust Corp. v. N. Bridge Assocs., Inc.*

    22 F.3d 1198 (1st Cir. 1994) .................................................................................... 4

*Rivera- Almodóvar v. Instituto Socioeconómico Comunitario, Inc., et al.*

    730 F.3d 23 (1st Cir. 2013) ...................................................................................... 4

*Roche* v. *John Hancock Mut. Life Ins. Co.*

    81 F.3d 249 (1st Cir. 1996) ...................................................................................... 10

*Scholz* v. *Delp*

    473 Mass. 242 (2015) ............................................................................................. 17

*Sindi* v. *El-Moslimamy*

    896 F.3d 1 (1st Cir. 2018) ....................................................................................... 17

*Shay* v. *Walters*

    702 F.3d 76 (1st Cir. 2012) ..................................................................................... 17

*Sheehan* v. *Marr*

     207 F.3d 35 (1st Cir. 2000) ...................................................................... 12

*Vargas-Ruiz v. Golden Arch Dev., Inc.*

     368 F.3d 1 (1st Cir 2004) ........................................................................ 4

*West* v. *Atkins*

     487 U.S. 42 108 S.Ct. 2250 (1988) ......................................................... 11

*Zambrana–Marrero* v. *Suarez–Cruz*

     172 F.3d 122 (1st Cir. 1999) .............................................................. 10, 11

Statues And Court Rules

Fed. R. Civ. P. 56 .............................................................................. 3, 4, 8, 18

42 U.S.C. § 1983 ..................................................................................... 9

28 U.S.C. § 1738 ................................................................................. 11, 12

Mass. Gen. Laws chapter 209A ................................................................ 12

Massachusetts Civil Rights Statute .......................................................... 16

Mass. Gen. Laws c. 12, § 11I .................................................................. 16

Restatement (Second) of Torts, § 46 comment d (1965) .................................. 17

Other

CM/EFC . See, Memorandum and Order, Document No. 21 ............................................. 2

*Rooker–Feldman* doctrine and the full faith and credit statute, 28 U.S.C. § 1738 .............. 11, 12

U.S. Const. amend. XIV, § 1 .................................................................. 13

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:20-cv-10178-IT

| | |
|---|---|
| SHARON RADFAR<br>        Plaintiff<br><br>v.<br><br>CITY OF REVERE, and<br>BRIAN M. ARRIGO, MAYOR; and<br>JAMES GUIDO, CHIEF OF POLICE; and<br>SERGEANT JOSEPH I. COVINO; and<br>OTHER AS YET UNNAMED OFFICERS<br>OF THE REVERE POLICE<br>DEPARTMENT; INDIVIDUALLY AND<br>IN THEIR OFFICIAL CAPACITIES AS<br>MAYOR, CHIEF OF POLICE AND<br>POLICE SERGEANT AND OFFICERS<br>OF THE CITY OF REVERE,<br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DEFENDANT JOSEPH I. COVINO'S *REVISED* MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

        Now comes defendant Joseph I. Covino, and in support of his motion for summary

judgment states the following:

BACKGROUND

        Plaintiff Sharon Radfar has brought a ten count complaint against defendant (Sergeant)

Joseph I. Covino, a police officer with the City of Revere.[1]  Complaint, Doc. No. 70-1.  In

addition to suing Covino, the plaintiff also sued the City of Revere, the Mayor of Revere, the

---

[1] Defendant Covino was subsequently promoted to the rank of Lieutenant with the Revere police
department.  He held the rank of sergeant during the times at issue.  During the time that the
defendant was involved with the plaintiff as alleged in the plaintiff's complaint, defendant
Covino was acting in his capacity as a private citizen and not as a law enforcement officer.  The
defendant is no longer employed by the City of Revere.

1

Revere Police Chief, and other unknown Lynn police officers.[2]  The plaintiff's complaint contains counts for federal equal protection violations under color of law (Count I), selective prosecution based on gender and origin (Count II), defamation (Count III), violation of Massachusetts of Civil Rights Act (Count IV), intentional infliction of emotional distress (Count V), deliberate indifference to need for training (Count VI – against municipal defendants only), conspiracy to violate civil rights (Count VII), refusal to prevent wrongs committed against plaintiff (Count VIII), abuse of process (Count IX), and malicious prosecution (Count X).

<u>ALLEGATIONS IN THE PLAINTIFF'S COMPLAINT</u>

1. From a factual standpoint, the plaintiff alleges in her Complaint that on January 31, 2017, four uniformed police officers seized her service weapons from her home in Northern Virginia where the plaintiff worked as a George Mason University Master Police Officer after defendant Covino obtained an Abuse Prevention Order against the plaintiff issued after a hearing by the Lynn District Court.  Ex. 1, Complaint, Doc. No. 70-1, pp. 2-3 at ¶¶6-8.

2. The plaintiff asserts that in petitioning the Lynn District Court for the Abuse Prevention Order, that defendant Covino misrepresented calls and messages they had exchanged, failed to disclose pertinent information, and made false and misleading claims. Ex. 1, Complaint, Doc. No. 70-1, pp. 2-3 at ¶7.

3. The plaintiff alleges that Covino called the plaintiff's employer and made false and misleading claims against the plaintiff, causing the plaintiff to be suspended from work and subject to an investigation. Ex. 1, Complaint, Doc. No. 70-1, p. 2-3 at  ¶9.

---

[2] All of the plaintiff's claims against the municipality and its employees were dismissed as of September 9, 2021.  <u>See</u>, Memorandum and Order, Doc. No. 21.

4. The plaintiff further alleges, with no specificity, that thereafter defendant Covino pursued criminal charges against the plaintiff which Covino knew to be false. Ex. 1, Complaint, Doc. No. 70-1, pp. 3-5 at ¶¶10-17.

5. Covino drafted an internal Revere police report that documented the plaintiff's actions between the summer of 2015 and January 29, 2017.  Ex. 1, Complaint, Doc. No. 70-1, pp. 3-4 at ¶12.

6. Without any factual support, the plaintiff also claims that she was treated differently by all the defendants based upon her Iranian descent.  Ex. 1, Complaint, Doc. No. 70-1, p. 5 at ¶18.

7. The plaintiff asserts that as a result of the conduct of all the defendants, she lost her position and her career as a police officer with George Mason University Police Department.  Ex. 1, Complaint, Doc. No. 70-1, pp. 4-7 at ¶¶11, 14, 19, 27.

<u>ARGUMENT</u>

Under Rule 56, the court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Baker v. St. Paul Travelers Ins. Co.*, 670 F.3d 119, 125 (1st Cir. 2012).  A dispute is genuine if a reasonable jury could return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248. Under Local Rule 56.1 a party seeking summary judgment must include "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation.  Failure to include such a statement constitutes grounds for denial of the motion."

3

"Rule 56(d) serves a valuable purpose. It protects a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion." *Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc., et al.*, 730 F.3d 23, 28 (1st Cir. 2013). (citing *Vargas-Ruiz v. Golden Arch Dev., Inc.*, 368 F.3d 1, 3 (1st Cir 2004)). It "provides a safety valve for claimants genuinely in need of further time to marshal 'facts, essential to justify [their] opposition ... to a summary judgment motion.'" *Reid v. New Hampshire*, 56 F.3d 332, 341 (1st Cir. 1995) (alteration in original) (quoting *Mattoon v. City of Pittsfield*, 980 F.2d 1, 7  (1st Cir. 1992)). "'Consistent with the salutary purposes underlying Rule 56(f), district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter.'"  <u>In re</u> *PHC Inc. Shareholder Litig.*, 762 F.3d 138, 143 (1st Cir. 2014) (quoting *Resolution Trust Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994)).

As noted above in the Local Rule 56.1 Statement of Material Facts of Record, all of the plaintiff's sweeping allegations in her Complaint lack factual support.  From a chronological standpoint, Paragraph 9 of the plaintiff's Complaint alleges that the defendant called her employer and made false and misleading claims against her, causing her employer to suspend her, open an investigation, and to seek criminal charges against her.  Ex. 1, Complaint, Doc. No. 70-1, p. 3 at ¶9.  There is no evidence that the defendant made any false and/or misleading claims against the plaintiff to her employer.  First and foremost, the plaintiff admitted at her deposition that she does not know what Covino said to her employer when he called them, so therefore she has no way to prove that anything that he said was false. Nor does she know what documents were provided to her employer.  The testimony of Lt. Ganley was simply that Covino "wanted a clean break" from the plaintiff.  <u>See,</u> Revised Statement Material Facts, Doc. No. 77 at ¶24.  "He did not want her contacting him."  <u>Ibid</u> But as found by the Virginia State Police

investigation, the plaintiff called the defendant at least 162 times since the police found that Covino (referred to by the state police as the "victim") told her "don't call me anymore." The record clearly establishes that Covino did not make false and misleading statements as the record is replete with undeniable evidence of stalking, harassment, and unwanted phone calls, text messages, and voicemails that would understandably and universally be considered harassing.

In addition to Covino not making false and misleading statements to the plaintiff's employer, it was established through discovery that the plaintiff had a long history of similar conduct against her former romantic interests. Lt. Ganley encountered several similar acts of obsessive, stalking-like behavior admitted by the plaintiff ( Revised Statement Material Facts, Doc. No. 77 at ¶¶27-31), Chief Rowan was told by Human Resources that the plaintiff had been a difficult employee (Revised Statement Material Facts, Doc. No. 77 at ¶42), and Chief Rowan had himself witnessed "disturbing" behavior on the part of the plaintiff (Revised Statement Material Facts, Doc. No. 77 at ¶44). In fact, Chief Rowan stated that he was not surprised when these allegations against the plaintiff surfaced (Revised Statement Material Facts, Doc. No. 77 at ¶46). Chief Rowan testified that he listened to dozens of phone messages the plaintiff had left on the defendant's phone and had found them to be "disturbing, threatening" and unlike anything he had a memory of hearing before. (Revised Statement Material Facts, Doc. No. 77at ¶¶84-91)

The record established that the plaintiff indeed called and texted the defendant's phone multiple, multiple times from blocked phone numbers and from other varied phone numbers after the defendant blocked the plaintiff's number. (Revised Statement Material Facts, Doc. No. 77 at ¶¶91-96 and Ex. 11, Virginia State Police Record, Doc. No. 70-11, pp. 14-15) The plaintiff threatened the defendant that she was in his town and was going to come to his home, and later drove eight hours to show up at his place of employment unannounced and unwanted. (Ex.4,

March 12 Text Messages from Radfar, Doc. No. 70-4 at ¶¶5-15)   The plaintiff's allegations that the defendant made false and misleading claims against her to her employer are not just unsupported, they were completely disproven through discovery.

In Paragraph 10 of her Complaint, the plaintiff alleged that "Covino relentlessly pursued criminal charges against Plaintiff though he knew she had committed no crime and those charges and claims were false."  (See, Ex. 1, Complaint, Doc. No. 70-1, p.3 at ¶10) This claim is also patently false.  Five days before the defendant applied for and received the Abuse Prevention Order, there was a meeting that occurred between the George Mason University Police Command Staff and the Virginia State Police which occurred on January 26, 2017.  The notes from this meeting clearly establish that it was Chief Rowan who requested the criminal investigation, telling the Virginia State Police that the plaintiff "did not need to be a police officer."  (Ex. 11, Virginia State Police Record,  Doc. No. 70-11 at p. 16)  Chief Rowan himself requested the criminal investigation, stressing that he wanted the Virginia State Police to know that this request was coming from the "top of the department."  (Ex. 10, Chief Rowan Deposition, Doc. No. 70-10 at p. 22)  Any documents the defendant provided to the Virginia State Police were provided because they were requested of Covino by Virginia State Police Special Agent Kinnard. (Ex. 13, 1-31-17 Administrative Leave Letter, Doc. No. 70-13 at ¶20)  Simply stated, defendant Covino did not request or "relentlessly pursue" any criminal investigation against the plaintiff, and to the extent he cooperated with a police request to provide them with text messages and phone records, that surely does not constitute a federal civil rights violation.  Had Covino desired to seek criminal charges against the plaintiff, he could and would have done so in Massachusetts where he had police authority.  That he did not and the fact

that he agreed to allow the Abuse Prevention Order to be vacated clearly shows that he did not "relentlessly" pursue criminal charges against the plaintiff.

Paragraph 12 of the plaintiff's Complaint alleges that "Covino falsely and maliciously accused Plaintiff of a crime he knew she did not commit" and that "[a]cting under color of law, he drafted a Revere Police Department incident report making false claims, listing himself as the victim, the reporting officer, and the supervisor approving the report."  Ex. 1, Complaint, Doc. No. 70-1, pp. 3-4 at ¶12.  First, as established by the Virginia State Police investigation, the text messages attached as Ex. 4, March 12 Text Messages from Radfar, Doc. No. 70-4 and Ex. 17, Screen shots of text messages, Doc. No. 70-17, the voicemails left on the defendant's phone produced as Ex. 19, Voicemail audio recordings, Doc. No. 70-19, none of what Covino wrote in his internal "To File" police report was untruthful.  But more importantly, this report was not used for any Massachusetts law enforcement purposes.  It was simply written at the request of Lt. Ganley who had emailed the defendant and requested such a report.  (Ex. 12, 1-25-17 Email From Lt. Ganley to Covino, Doc. No. 70-12).  Significantly, Chief Rowan testified that he had never even seen the defendant's internal "To File" police report until it was used as an exhibit at his deposition.  As such, this police report had absolutely no bearing whatsoever on the ending of the plaintiff's law enforcement career.

It is also not accurate for the plaintiff to maintain that she did not commit a crime.  There was ample evidence from which the Virginia authorities could have charged the plaintiff with a crime.  The prosecutor who screened the case simply felt that (1) the crime committed by the plaintiff was not worth the expense of having the defendant fly to Virginia to testify on at his own expense, and (2) that the proper forum for any prosecution was in Massachusetts.  See, Revised Statement Material Facts, Doc. No. 77 at ¶¶76-77

In Paragraph 15 of the plaintiff's Complaint, the plaintiff alleges that "[d]ue to the misconduct by the Defendants Plaintiff's private telephone records were the subject of a search warrant in which a court within the jurisdiction where she was employed as a police officer received the smears that had been leveled against her." Ex. 1, Complaint, Doc. No.70-1, p. 4, at ¶15. What the plaintiff fails to recognize in Paragraph 15 of her Complaint is first, that defendant Covino was not the person who sought out a search warrant, and second, that a Virginia court found probable cause to issue the search warrant based upon an affidavit from Virginia law enforcement.  As a Virginia judge found probable cause to issue the search warrant, the defendant committed no wrongdoing.

Finally, Paragraph 14 of her Complaint, the plaintiff falsely alleges that "Defendants' misconduct toward Plaintiff caused her the loss of her job." Ex. 1, Complaint, Doc. No. 70-1, p. 4 at ¶14.  As established by the Material Facts set forth in the Local Rule 56.1 statement, this statement could not be further from the truth.  Indeed, it was the plaintiff's own misconduct, not just towards defendant Covino, but based on multiple past infractions, that caused her employer to refer this matter to the Virginia State Police.  Knowing full well that she had failed two fitness for duty evaluations, the plaintiff nevertheless persisted in her lie that it was Covino's misconduct that caused her to lose her job, lying through omission in her answers to interrogatories by failing to even mention the two failed psychological evaluations of fitness for duty.  (Revised Statement Material Facts, Doc. No. 77 at ¶¶98-100)  On top of this, the plaintiff was also subject to an Abuse Prevention Order granted out of the Brockton District Court that further prevented her from carrying a firearm.  (Revised Statement Material Facts, Doc. No. 77 at ¶¶ 106-110).  Unlike Covino, who agreed to the dismissal of the order, Jason Ford asked the court to extend his order and the court granted his extension.  From a factual standpoint, the

plaintiff cannot prove any of her grandiose allegations in her Complaint.  From a legal standpoint, the plaintiff fares no better.

<u>CIVIL RIGHTS CLAIM</u>

The plaintiff's claim for "Abuse of Authority Under Color of Law" in Count I of the plaintiff's complaint fails because at all material times, defendant Covino was acting in his capacity as a private citizen.  Additionally, he committed no wrongdoing.  It also fails because at no time did defendant Covino deprive the plaintiff of any rights guaranteed under the Constitution.  "To sustain an action under 42 U.S.C. § 1983," Radfar must prove both: "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Collins* v. *Nuzzo*, 24 F.3d 246, 250 (1st Cir.2001).  Radfar can prove neither of these elements.

Covino petitioned the Lynn District Court as private citizen, seeking relief from the court after a long period of harassment and abuse by the plaintiff.  Covino was off-duty at the time of his court appearance.  He was not in uniform.  He did not wield any law enforcement powers and, in fact, was outside of Revere, the jurisdiction where he has law enforcement powers.  Covino took the same actions any citizen would take when someone had endured what Covino set forth under oath in his Affidavit in support of the Abuse Prevention Order.  As noted in Covino's Affidavit, the plaintiff had called him four hundred times on MLK (Martin Luther King) weekend, had called him over a hundred times in one day, had created fake social media personas in order to stalk Covino and befriend his friends, and had showed up at his place of employment and also previously threatened to come to his house unannounced and uninvited, threating to cause a scene if Covino refused to visit her. Revised Statement Material Facts, Doc. No. 77 at ¶¶4, 5-15.  Covino's petitioning the court for relief from abuse was the act of a private

citizen, and was not done in Covino's capacity of a law enforcement officer or in conjunction with anyone employed by the Revere Police Department.

Generally, a private party's conduct will not subject them to liability under Section 1983. *Roche* v. *John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1st Cir. 1996).  A private party's conduct will be attributable to the state when the state "'has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity.'" *Camilo–Robles* v. *Hoyos*, 151 F.3d 1, 10 (1st Cir. 1998), quoting *Barrios–Velazquez* v. *Asociacion De Empleados Del Estado Libre Asociado*, 84 F.3d 487, 494 (1st Cir. 1996).  To distinguish private action from state action, "the general inquiry is whether 'a state actor's conduct occurs in the course of performing an actual or apparent duty of his office or ... is such that the actor could not have behaved in that way but for the authority of his office.'" *Zambrana–Marrero* v. *Suarez–Cruz*, 172 F.3d 122, 125 (1st Cir. 1999), citing *Martinez* v. *Colon*, 54 F.3d 980, 986 (1st Cir. 1995).  Although this concept can be "particularly elusive when applied to police conduct," it is not so in this case. *Zambrana–Marrero*, 172 F.3d at 125. Covino's conduct did not occur in the course of his official duties, either actual or apparent.

The determination of whether a police officer was acting under color of state law requires a court to assess the totality of the circumstances and consider "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Zambrana–Marrero*, 172 F.3d at 125, quoting *Barreto–Rivera* v. *Medina-Vargas*, 168 F.3d 42, 46 (1st Cir. 1999).  The general inquiry is whether the officer's actions occurred while he was performing an actual or apparent duty or whether the officer could not have behaved the way he did "'but for the authority of his office.'" *Zambrana–Marrero*, 172 F.3d at 125, quoting *Martinez*, 54 F.3d at 986.  A defendant acts under color of state law when he exercises power

that is "'possessed by virtue of state law'" and made possible because the defendant is clothed in the authority of state law. *Martinez,* 54 F.3d at 986, quoting *West* v. *Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255 (1988).

There are certain discrete factors which a court may consider including the officer's clothing, their duty status and the existence of a regulation providing that officers are on duty twenty-four hours a day, the use of a police cruiser and police radio, and the use of police equipment such as a service weapon, handcuffs or other traditional law-enforcement tools, whether the officer detained, interrogated, or searched a citizen, and the location of the incident. *See Zambrana–Marrero*, 172 F.3d at 128; *Barreto–Rivera*, 168 F.3d at 45, 48; *Parrilla–Burgos*, 108 F.3d at 449; *Martinez*, 54 F.3d at 985–86.  These factors, however, should not be applied in a simplistic or mechanical formula. No single factor will be dispositive in a determination of whether an officer was acting under color of state law. *Zambrana–Marrero*, 172 F.3d at 125; *Barreto–Rivera*, 168 F.3d at 45.  Here, it is clear that Covino was acting solely in his capacity as a private citizen.  He was on personal business on his own personal time in civilian clothes.  No law enforcement powers were employed.  As there was no state action, the plaintiff's federal civil rights claim fails.

Additionally, the plaintiff cannot establish the second element of a federal civil rights claim as she was never deprived of any right guaranteed under the Constitution.  A judge in the Lynn District Court considered the merits of what Covino set forth in his Affidavit in support of the order and granted Covino relief.  As such, the *Rooker–Feldman* doctrine and the full faith and credit statute, 28 U.S.C. § 1738, preclude revisiting this issue.  The *Rooker–Feldman* doctrine provides that no federal district or appellate court has jurisdiction to review state court judgments. *Sheehan* v. *Marr,* 207 F.3d 35, 39–40 (1st Cir. 2000); see *District of Columbia Ct. of*

11

*Appeals* v. *Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983).  For federal claims not presented in state court, *Rooker–Feldman* "forecloses lower federal court jurisdiction over claims that are 'inextricably intertwined' with the claims adjudicated in a state court." *Sheehan*, 207 F.3d at 39–40.  A federal claim is "inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Hill* v. *Conway*, 193 F.3d 33, 39 (1st Cir. 1999). The logic of this rule stems from the proposition that if a federal court were able to grant relief from the state-court judgment, it would be "difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Hill*, 193 F.3d at 39.  Moreover, 28 U.S.C. § 1738 requires this court to give "the same preclusive effect to state court judgments—both as to claims and issues previously adjudicated—as would be given in the state court system in which the federal court sits." *Keystone Shipping Co.* v. *New England Power Co.*, 109 F.3d 46 (1st Cir. 1997), citing *Kyricopolous* v. *Town of Orleans*, 967 F.2d 14 (1st Cir. 1992).   A state-court issued judgment has the same preclusive effect in § 1983 suits as in other federal suits. See *Migra* v. *Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 83–85, 104 S.Ct. 892 (1984).

With a judge in the Lynn District Court issuing a restraining order against Radfar pursuant to Mass. Gen. Laws chapter 209A, the doctrines of issue preclusion and collateral estoppel bar Radfar from relitigating in federal court whether the issuance of the restraining order was unconstitutional.  Under Massachusetts law, for an issue to have preclusive effect in a subsequent proceeding, four elements must be present: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment." *Keystone Shipping Co.*

v. *New England Power Co.*, 109 F.3d 46, 51 (1st Cir. 1997), citing *Grella* v. *Salem Five Cent Savings Bank*, 42 F.3d 26, 30 (1st Cir. 1994). An issue may be "actually decided" where it "constituted, logically or practically, a necessary component of the decision reached in the prior litigation." *Grella*, 42 F.3d at 30–31; see *Keystone Shipping*, 109 F.3d at 51 (applying Massachusetts law). Here, the plaintiff's claims that Covino misrepresented phone calls and messages between himself and the plaintiff, that he failed to disclose pertinent information to the court, or that he made misleading claims to the court cannot be relitigated here. And even if they were to be, the record shows that the plaintiff called Covino (the "victim") at least 162 times since he said "don't call me."

<u>EQUAL PROTECTION</u>

Count II of the plaintiff's Complaint alleges selective prosecution based on gender and national origin. Ex. 1, Complaint, Doc. No. 70-1, pp. 8-9 at ¶¶29-30. This claim is defective for the reasons set forth above: that Covino never exercised any law enforcement powers, that was engaged in protected petitioning acts solely a private citizen, and that his actions never deprived the plaintiff of any rights protected by the Constitution, but they also fail as there is not a shred of evidence that any of Covino's actions were based upon the plaintiff's race or national origin. The Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, a plaintiff must allege that he or she "was treated differently from others similarly situated ... based on impermissible considerations." *Clark* v. *Boscher*, 514 F.3d 107, 114 (1st Cir. 2008)(quotation marks and citation omitted). "The Supreme Court has held that differential treatment based on suspect classifications (race, national origin, religion, or alienage) is subject to strict scrutiny; differential treatment based on quasi-suspect classifications (gender

or illegitimacy) is subject to intermediate scrutiny; and differential treatment based on all other classifications simply must survive a rational basis inquiry." *Pineiro* v. *Gemme*, 937 F. Supp. 2d 161, 176 (D. Mass. 2013). "This showing of disparate treatment is a 'threshold requirement' of any equal protection claim." *Lu* v. *Smith*, No. 15-cv-14081-DJC, 2016 WL 4595206, at *3 (D. Mass. Sept. 2, 2016), quoting *Ayala-Sepulveda* v. *Municipality of San German*, 671 F.3d 24, 32 (1st Cir. 2012). A violation of equal protection has occurred only where there has been a "'gross abuse of power, invidious discrimination, or fundamentally unfair procedures' or some sort of unjustified disparate treatment with respect to similarly situated" persons. *Collins* v. *Nuzzo*, 244 F.3d 246, 251 (1st Cir. 2001), citing *Creative Environments, Inc.* v. *Estabrook*, 680 F.2d 822, 832 n.9 (1st Cir. 1982). In the instant case, the plaintiff cannot show that Covino treated her any differently than he would have treated a woman of any other race who called him over four hundred times over Martin Luther King weekend, called a hundred times in one day, who forced him to block hundreds of phone numbers on his cell phone, and who twice drove from Virginia and showed up at his workplace and neighborhood and threatened to cause a scene, and who created multiple social media accounts to stalk Covino. The plaintiff's selective prosecution claim fails for myriad reasons.

<u>DEFAMATION</u>

Count III of the plaintiff's Complaint alleges defamation, essentially asserting that Covino told the plaintiff's employer that she had committed criminal acts when he knew that she hadn't committed criminal acts. Ex. 1, Complaint, Doc. No. 70-1, p. 9 at ¶32-35. This claim also fails as Covino's actions of contacting the plaintiff's employer when the plaintiff showed up in his neighborhood and called him was protected petitioning behavior as demonstrated above. Moreover, all of it was true. As Lt. Ganley testified, the gist of the defendant's phone call was

that Covino "wanted a clean break from her.  Did not want her contacting him, coming up there or interfering with his work or his family." (Revised Statement Material Facts, Doc. No. 77 at ¶24)  Given the plaintiff's actions of threatening to come to Covino's home, driving eight hours to go to his place of employment, the repeated phone calls and text messages from dozens and dozens of multiple phone numbers, the dozens and dozens of voicemails that Chief Rowan found disturbing, and the plaintiff's past track record, nothing that Covino did or said was untrue or unwarranted.

As a starting point, summary disposition of defamation claims is "especially favored" in Massachusetts because meritless cases put "an unjustified and serious damper on freedom of expression" and "the costs of litigation may induce an unnecessary and undesirable self-censorship." *King* v. *Globe Newspaper Co.*, 400 Mass. 705, 708 (1987).  Although it is not necessary for a plaintiff to plead defamation under the requirements of Rule 9(b), the pleadings in a defamation case need to be sufficiently detailed to the extent necessary to enable the defendant to respond.  See *McGeorge* v. *Continental Airlines, Inc.*, 871 F.2d 952, 955–956 (10th Cir. 1989);  *Kelly* v. *Schmidberger,* 806 F.2d 44, 45–6 (2d Cir. 1986), citing *Liguori* v. *Alexander*, 495 F.Supp. 641, 647 (S.D.N.Y. 1980) (providing that the complaint must at least give the defendant sufficient notice of the statements complained of to enable the defendant to mount a defense);  *Cohlmia* v. *Ardent Health Services, LLC*, 448 F.Supp.2d 1253, 1268 (N.D. Okla .2006);  *Linker* v. *Custom–Bilt Machinery, Inc.*, 594 F.Supp. 894, 902 (E.D. Pa. 1984).  Here, the plaintiff does not even know what Covino said to her employer.  The plaintiff's employer requested an investigation by the Virginia State Police that uncovered harassment and stalking behavior by the plaintiff, which was all consistent with her past history.  The plaintiff

subsequently failed two fitness for duty evaluations and thereafter resigned.  There was no

defamation.

## MASSACHUSETTS CIVIL RIGHTS CLAIM

Count IV of the plaintiff's Complaint alleges violation of the Massachusetts Civil Right

Statute. Ex. 1, Complaint, Doc. No. 70-1, pp. 9-10 at ¶¶37-38.  The plaintiff's claim under the

Massachusetts Civil Rights Statute, Mass. Gen. Laws c. 12, § 11I, must also be dismissed. "The

MCRA is the state 'counterpart' to Section 1983 and, in general, is coextensive therewith."

*Mangual* v. *City of Worcester*, 285 F.Supp. 3d 465, 471 (D.Mass. 2018).  "The primary

difference is that to succeed on an MCRA claim, a plaintiff must also show that the violation of

rights occurred 'by threats, intimidation or coercion.'" *Id.*, quoting *Bally* v. *Northeastern Univ.*,

404 Mass. 713, 718 (1989).  "To establish a claim under the Massachusetts Civil Rights Act, 'a

plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right;

(2) has been interfered with, or attempted to be interfered with; and (3) such interference was by

threats, intimidation, or coercion.'" *Glovsky* v. *Roche Bros. Supermarkets*, 469 Mass. 752, 762

(2014), quoting *Currier* v. *Nat'l Bd. of Med. Exam'rs*, 462 Mass. 1, 12 (2012).  For purposes of

the act, "threats, intimidation or coercion" are defined as follows:

> a 'threat' consists of 'the intentional exertion of pressure to make another fearful or
> apprehensive of injury or harm;' 'intimidation' involves 'putting in fear for the purpose of
> compelling or deterring conduct;' and 'coercion' is 'the application to another of such
> force, either physical or moral, as to constrain him [or her] to do against his [or her] will
> something he [or she] would not otherwise have done.
>
> *Glovsky*, 469 Mass. at 762-763, quoting *Haufler* v. *Zotos*, 466 Mass. 489, 505 (2006).

Here, there is nothing in the plaintiff's Complaint that remotely establishes a claim of

loss of a constitutional right, but more so, there is nothing remotely akin to the necessary element

of a threat, intimidation, or coercion.  The plaintiff lost her law enforcement career as a result of

her own conduct and as a result of her own mental instability.  As such, Count IV must be dismissed.

<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

Count V of the plaintiff's Complaint alleges intentional infliction of emotional distress. Ex. 1, Complaint, Doc. No. 70-1, p. 10 at ¶¶40-41. This count too must be dismissed.  As a starting point, "[a] failed defamation claim cannot be recycled as a tort claim for negligent or intentional infliction of emotional distress." *Shay* v. *Walters*, 702 F.3d 76, 83 (1st Cir. 2012), citing *Hustler Magaxzine, Inc.* v. *Falwell*, 485 U.S. 46, 56-57, 108 S.Ct. 876 (1988); see also *Scholz* v. *Delp*, 473 Mass. 242 (2015). In addition, "Massachusetts law sets a high bar of proof for severity." *Sindi* v. *El-Moslimamy*, 896 F.3d 1, 22 (1st Cir. 2018).  See also *Kennedy* v. *Town of Billerica*, 617 F.3d 520, 530 (1st Cir. 2010)(explaining that "mere emotional responses including anger, sadness, anxiety, and distress ... are not often legally compensable").  A motion to dismiss is appropriate when the alleged conduct is not sufficiently severe.  See *Beecy* v. *Pucciarelli*, 387 Mass. 589, 596 (1982).  Here no matter how one views it, the defendant's conduct cannot be viewed as "conduct [that] was 'extreme and outrageous,' and was 'beyond all possible bounds of decency' and that was 'utterly intolerable in a civilized community.'"  *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 145 (1976), quoting Restatement (Second) of Torts, § 46 comment d (1965).  He was simply looking to have the plaintiff leave him alone and he followed the proper legal channels to do so.  He did nothing extreme or outrageous.

REFUSAL TO PREVENT WRONGS COMMITTED AGAINST PLAINTIFF, ABUSE OF
<u>PROCESS AND MALICIOUS PROSECUTION</u>

Count VIII of the plaintiff's Complaint alleges Refusal to Prevent Wrongs Against Plaintiff, Count IX of the plaintiff's Complaint alleges Abuse of Process, and Count X alleges Malicious Prosecution. Ex. 1, Complaint, Doc. No. 70-1., pp. 12-14 at ¶¶48-59.  Clearly, all of

these claims also fail.  Since the plaintiff's civil rights were not violated, there can be no claim

for a conspiracy to violate rights that were not violated.  She was never prosecuted, but even if

she had been, such decisions were made by Chief Rowan, the Virginia State Police, and the

Virginia Prosecutor's Office. No wrongs were committed against the plaintiff, so Count VIII

fails.  And the plaintiff was never subjected to court process, nor was she ever prosecuted for any

offenses in Massachusetts – let alone offenses for which there was no probable cause, see *Beecy*

v. *Pucciarelli*, 387 Mass. 589, 593-594 (1982), citing *Nelson* v. *Miller*, 227 Kan. 271, 282-283,

607 P.2d 438 (1980), so Counts IX and X also fail.

<u>CONCLUSION</u>

For the foregoing reasons, the defendant respectfully moves that all counts of the

plaintiff's Complaint be dismissed as there are no disputes of material facts and the defendant is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

> Respectfully submitted,
> Defendant,
> Joseph I. Covino,
> By his Attorney,
>
> */s/ Kenneth H. Anderson*
> Kenneth H. Anderson, Esq. / B.B.O. # 556844
> Anderson, Goldman, Tobin & Pasciucco
> 50 Redfield Street
> Boston, MA  02122
> (617) 265-3900
> kanderson@andersongoldman.com

Dated: April 16, 2024

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document, **Defendant Joseph I. Covino's** *Revised* **Memorandum Of Law In Support Of Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56** filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on April 16, 2024.


<u>*/s/ Kenneth H. Anderson, Esq.*</u>
Kenneth H. Anderson, Esq.

19